UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **B.E. Technology, L.L.C.,**<br><br>             **Plaintiff,**<br><br>      **v.**<br><br>**Sony Computer Entertainment America LLC,**<br><br>             **Defendant.** | Civil Action No. 2:12-cv-02826-JPM-tmp |

## MEMORANDUM IN SUPPORT OF SONY COMPUTER ENTERTAINMENT AMERICA LLC'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A) TO THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

Defendant Sony Computer Entertainment America LLC ("SCEA") respectfully submits this memorandum in support of its motion to transfer this action to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404(a).  To reduce the Court's need to review substantially duplicative documents, this memorandum also supports the transfer motions being filed by two affiliates of SCEA, Sony Electronics Inc. ("SEL") and Sony Mobile Communications (U.S.A.) Inc. ("SoMC"), in the separate actions filed against them in this Court by the same plaintiff, B.E. Technology, L.L.C. ("BET") and therefore includes relevant factual information pertaining to each of the three moving defendants.

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................. 1

II.     STATEMENT OF THE FACTS ......................................................................... 3

    A.      The Accused Sony Entities Are Either Headquartered in California or Have
            Significant Operations There. .................................................................... 4

        1.      SCEA Is Headquartered in the Northern District of California ................. 4

        2.      SEL Is Headquartered in California............................................................ 5

        3.      SoMC Maintains a Significant Business Presence in California ............... 6

    B.      BET's Inventor/CEO Allegedly Lives in Tennessee, but all Relevant BET
            Business Has Been Conducted Outside of Tennessee. ............................ 7

    C.      Many of the Defendants in this Litigation Are Located in California................... 9

    D.      Third Party Witnesses Are Not Located in Tennessee ........................ 10

III.    APPLICABLE LAW ......................................................................................... 11

IV.     ANALYSIS ......................................................................................................... 12

    A.      This Case Could Have Been Brought in the Northern District of California. ....... 12

    B.      The Private Factors Strongly Favor a Transfer...................................... 12

        1.      It Is Clearly More Convenient for the Witnesses to Litigate this Action in
                the Northern District of California............................................. 12

        2.      The Location of Sources of Proof, Including Documents and Things Is in
                California ..................................................................................... 16

        3.      The Availability of Compulsory Process to Compel Unwilling Witnesses
                Strongly Favors the Northern District of California ................................. 16

        4.      No Other Administrative Difficulties or Practical Problems Favor This
                District over the Northern District of California....................................... 17

    C.      Plaintiff's Choice of Forum Is Not Dispositive. .................................... 18

    D.      The Public Factors Favor a Transfer.................................................... 20

V.      CONCLUSION ................................................................................................. 20

## I.       INTRODUCTION

Sony respectfully requests that this case be transferred from the Western District of Tennessee ("the Western District") because under the criteria established by 28 U.S.C. § 1404(a) and the law of this Circuit, it would be in the interest of justice and serve the convenience of the parties and witnesses to litigate the case in a district that is the location of the vast majority of likely trial witnesses and relevant evidence.  The relevant discovery and the proofs for trial in this matter will primarily relate to technical product information (non-infringement), marketing and sales information (potential damages and possibly obviousness), and prior art (invalidity). None of these categories of proof –no witnesses or documents– will be found in the Western District for Sony.  Rather, most of the relevant Sony witnesses and documents will be in the Northern District of California or within close proximity of that District.  This is also true for third parties, prior art witnesses, and, as we understand, for the numerous other companies that BET has recently sued in the Western District for alleged infringement of U.S. Patent No. 6,771,290 ("the '290 Patent") or related patents.

Technical information relevant to the accusations against Sony can be found in Sony's facilities in either the Northern District of California, the Southern District of California, Japan, or possibly Sweden.  Marketing and sales information is also located in the Northern District of California or the Southern District of California.  Much of the prior art relevant to the patent (which, in general terms, relates to the way that users access files stored on computer servers), can be found in the epicenter of the U.S. computer industry, the Northern District of California.

As will be shown, all but two of the sixteen other defendants BET has sued in the Western District have significant operations in California, and nearly half are based there.  We understand that not a single defendant is based in or has operations in Tennessee, excluding retail

stores of two defendants.  Many defendants have already filed motions to transfer to California and Sony understands that all of the other defendants will be filing motions to transfer as well.

In these other motions to transfer and in this motion below, numerous third party witnesses not employed by any of the parties have been identified as having potentially relevant knowledge of the prior art for the '290 Patent, and have been identified as residing in Northern California or working at Northern California companies.  Such third party witnesses will not be subject to the compulsory subpoena power of the Western District, and indeed will be subject only to the subpoena power of the Northern District of California.

Sony brings this motion understanding that ordinarily deference should be given to a plaintiff's choice of forum, but, in this case, BET's connection to the Western District is slight. BET was formed in Michigan, had operations in Louisiana and Michigan, and only registered to do business in Tennessee the day before filing the first of its nineteen patent infringement lawsuits.  There is no evidence that BET performs any business in Tennessee, other than filing its patent infringement suits.  The only connection this case has to the Western District is based on the alleged Tennessee residence of Martin David Hoyle, the '290 Patent's inventor and CEO of BET.  However, the plaintiff in this case is BET, a Michigan and Louisiana based company, not Mr. Hoyle himself, and therefore little deference is due to Mr. Hoyle's choice of residence. Regardless, Sony believes that any deference is strongly outweighed by the overwhelming amount of discovery and trial testimony that is expected to come from the Northern District of California and the area within its subpoena power, including from numerous third parties not in the suit and that are not subject to the subpoena power of the Western District.

Sony submits that a balancing of the factors relevant to 28 U.S.C. § 1404(a) strongly favors transfer and therefore respectfully requests that this case be transferred to the Northern District of California.

## II.   STATEMENT OF THE FACTS

BET filed this patent infringement action against SCEA, SEL, and SoMC on September 21, 2012[1] and now alleges that 133 allegedly Sony products infringe the claims of the '290 Patent.  *See* Exs. P-1, P-2, P-3, Initial Infringement Contentions.

BET also sued sixteen other entities in September and October 2012, alleging infringement of the '290 Patent and two other patents in the '290 Patent's family.[2]  Apple Inc. ("Apple"), Barnes & Noble, Inc., Google Inc. ("Google"), Groupon, Inc., Microsoft Corporation, Motorola Mobility Holdings LLC, Facebook, Inc., LinkedIn Corporation, Pandora Media, Inc., Samsung Electronics America, Samsung Telecommunications America, LLC and Spark Networks, Inc. have already moved to transfer.[3]  BET has filed a responsive brief to Apple Google, Motorola Mobility Holdings LLC, Pandora Media, Inc., and Spark Networks, Inc.'s

---

[1]  *See* Complaint, *B.E. Technology, L.L.C. v. Sony Computer Entertainment America LLC*, 2:12-cv-02826 (W.D. Tenn.); *B.E. Technology, L.L.C. v. Sony Electronics Inc.*, 2:12-cv-02828 (W.D. Tenn.); *B.E. Technology, L.L.C. v. Sony Mobile Communications (USA) Inc.*, 2:12-cv-02827 (W.D. Tenn.).

[2]  *See* 2:2012-cv-02767, 2:2012-cv-02831, 2:2012-cv-02823, 2:2012-cv-02830, 2:2012-cv-02829, 2:2012-cv-02866, 2:2012-cv-02825, 2:2012-cv-02824, 2:2012-cv-02769, 2:2012-cv-02781, 2:2012-cv-02772, 2:2012-cv-02834, 2:2012-cv-02782, 2:2012-cv-02833, 2:2012-cv-02832, 2:2012-cv-02783.

[3]  All of these parties have moved to transfer to the Northern District of California with the exception of Spark Networks, Inc., who has moved to transfer to the Central District of California.  *See* Defendant's Memorandum In Support of Its Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and for Expedited Hearing, *B.E. Technology v. Google Inc.*, 12-cv-02830-JPM-tmp, Dkt. 22 (W.D. Tenn. Dec. 18, 2012) ("Google's Motion to Transfer"); Defendant's Memorandum In Support of Its Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), *B.E. Technology v. Apple Inc.*, 12-cv-02831-JPM-tmp, Dkt. 22 (W.D. Tenn. Dec. 18, 2012) ("Apple's Motion to Transfer").

motions with supporting declarations.[4]  Sony understands that all nineteen defendants BET has

sued have moved, or will be moving to transfer their respective cases, almost all of them to

California.

**A.      The Accused Sony Entities Are Either Headquartered in California or Have Significant Operations There.**

<u>1.</u>      <u>SCEA Is Headquartered in the Northern District of California</u>

SCEA is a limited liability company[5] with headquarters in Foster City, California, within

the Northern District of California.  *See* Ex. A, Decl. of Jennifer Y. Liu ("SCEA Decl.") ¶¶ 2, 3.

SCEA also has two other offices in Foster City.  *Id.* ¶ 3.  SCEA has approximately 895

employees working in its Foster City offices.  *Id.* ¶ 3.  The potentially relevant known U.S.

documents and things related to products sold by SCEA in its possession are located at its offices

in Foster City.  *Id.* ¶ 6.  SCEA's known prospective witnesses are located at or near its offices in

Foster City.  *Id.* ¶ 7.  SCEA's anticipated witnesses in connection with the sales, finance, and

marketing of the accused products are enumerated in Table 1.  Each of these witnesses works at

SCEA's Foster City offices and resides within the Northern District of California.  *Id.* ¶ 7.

SCEA has no offices or facilities within the Western District and there are no known

SCEA witnesses there.  *Id.* ¶¶ 4, 8.  SCEA has no meaningful connection to the Western District.

---

[4] *See* Plaintiff's Memorandum in Opposition to Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), *B.E. Technology v. Google Inc.*, 12-cv-02830-JPM-tmp, Dkt. 29, Dkt. 29, Ex. 1 (W.D. Tenn. Dec. 18, 2012) ("BET's Opposition to Google's Motion to Transfer"); Plaintiff's Memorandum in Opposition to Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), *B.E. Technology v. Apple Inc.*, 12-cv-02831-JPM-tmp, Dkt. 29 (W.D. Tenn. Dec. 18, 2012).

[5] In its Answer, SCEA inadvertently admitted to the erroneous BET averment that SCEA is a Delaware "corporation."  *See* Answer, Dkt. 21, 2:12-cv-02826 (W.D. Tenn. Dec. 31, 2012).  This admission is inaccurate; as evident from its name, SCEA is a Delaware limited liability company.

**Table 1: SCEA Employees with Potentially Relevant Information.**  *Id.* ¶ 7.

| Name | Title | Location |
|------|-------|----------|
| John Koller | Vice President, Product Marketing | Foster City, CA |
| Aaron Wong | Senior Lead Accountant | Foster City, CA |

2.      SEL Is Headquartered in California

SEL is headquartered in San Diego, California.  *See* Ex. B, Decl. of Matthew Seymour ("SEL Decl."), ¶ 3.  There are approximately 1,244 SEL employees in San Diego including software engineers, service engineers, and quality assurance support engineers who test products for use in the field and test software for compliance with U.S. market requirements.  *Id.* ¶ 3.  SEL also has a large facility in San Jose, California, within the Northern District of California.  *Id.* ¶ 5.  Approximately 245 employees work at the San Jose facility, including members of the Digital Reader Business, a category of accused products, who primarily handle software and quality assurance engineering, as well as some marketing, testing, and support roles.  *Id.* ¶ 5.

SEL's California employees, along with their counterparts in Japan, are likely to have relevant knowledge of SEL's accused products.  *Id.* ¶ 9.  As a result, the U.S.-based SEL witnesses with knowledge relating to the design, development, function, and operation of the accused SEL products are located in California, as are their corresponding documents.  *Id.* ¶ 9.

SEL's San Diego headquarters also houses the company's corporate financial, sales, and marketing documentation.  *Id.* ¶ 4.  Employees at the San Diego office manage the company's sales, distribution, and customer service departments, and are responsible for its U.S. marketing strategies, platform development, corporate research, and tradeshow exhibits.  *Id.* ¶ 4.

In Table 2, SEL identifies fourteen SEL employees located in California with knowledge potentially relevant to this lawsuit, including information about the development, engineering, and testing of software and hardware, as well as marketing, service, and the competitive market and business for SEL's accused products.  *Id.* ¶ 9.

SEL has no facilities in Tennessee and is unaware of any potential SEL witnesses based in Tennessee who have specific information relevant to this case.  *Id.* ¶¶ 6, 10.

**Table 2: SEL Employees with Potentially Relevant Information.  *Id.* ¶ 9.**

| Name | Title | Location |
|---|---|---|
| Kevin Brinkman | Senior Manager, TV Product Marketing | San Diego, CA |
| Yang Cheng | Senior Manager, Product Strategy | San Diego, CA |
| Chris Goodman | Vice Pres., Finance | San Diego, CA |
| Natascha Helbig | Director, Product Marketing, Reader Store | San Jose, CA |
| Klaus Hofrichter | Vice Pres., UXSC Home | San Diego, CA |
| Hiraku Inoue | Vice Pres., Software Eng. | San Jose, CA |
| Tiger Izaki | Director, Product Planning & Strategy | San Diego, CA |
| Lordita Canlas | Senior Marketing Mgr., Core Video/HMD | San Diego, CA |
| Jamie Marsh | Senior Product Marketing Manager | San Diego, CA |
| Ken Orii | Vice Pres., Marketing | San Diego, CA |
| Julie Reynosa | Director, Business Planning | San Diego, CA |
| Mark Schmidt | Director, QA Engineering | San Diego, CA |
| Oscar Vega | Vice Pres., UX Engineering | San Diego, CA |
| Lisa Wayne | Director, Business Operations | San Diego, CA |

3.    <u>SoMC Maintains a Significant Business Presence in California</u>

SoMC is a wholly owned indirect subsidiary of Sony Corporation and oversees the company's United States smart phone business unit.  SoMC employs approximately 125 people in its Redwood City, California office, within the Northern District of California's jurisdiction. *See* Ex. C, Decl. of Susana Capper ("SoMC Decl.") ¶ 3.  The Redwood City facility is the primary site for all of SoMC's U.S.-based technology development efforts.  *Id.* ¶ 3.  All U.S. SoMC technical witnesses will likely be based from this Redwood City office.  *Id.* ¶ 7.  SoMC witnesses with potentially relevant information are enumerated in Table 3.  Many potentially relevant documents and things related to the accused products in SoMC's possession are likely located in its Redwood City, California offices, and most, if not all, relevant technical documents created by SoMC are created in its Redwood City, California offices.  *Id.* ¶ 6.  The other major U.S. SoMC office is in Atlanta, Georgia.  *Id.* ¶ 7.  SoMC employees regularly commute from

Atlanta to the California office to meet and coordinate with personnel from other Sony companies. *Id.* ¶ 7. The Redwood City office has facilities for out-of-state employees to work remotely and as a result, for SoMC employees, travel from Atlanta to Redwood City is less burdensome than to most other U.S. locations. *Id.* ¶ 7.

SoMC has no facilities in Tennessee and is unaware of any potential SoMC witnesses based in Tennessee who have specific information relevant to this case. *Id.* ¶¶ 4, 8.

**Table 3: SoMC Employees with Potentially Relevant Information. *Id.* ¶ 7.**

| Name | Title | Location |
| --- | --- | --- |
| Kim Ahlstrom | Senior Manager, Research Labs Silicon Valley | Redwood City, California |
| Jorgen Birkler | Senior Manager | Redwood City, California |
| Martin Granstrom | Senior Manager | Redwood City, California |
| Kuldeep Jain | Senior Systems Engineer, Software | Redwood City, California |
| Toshihiko Kii | Program Manager, Software | Redwood City, California |
| Wayne Moyoung | Senior Verification Engineer, Software | Redwood City, California |
| Minshik Roh | Director, Business & Partner Development | Redwood City, California |

**B.     BET's Inventor/CEO Allegedly Lives in Tennessee, but all Relevant BET Business Has Been Conducted Outside of Tennessee.**

The only connection that BET has to Tennessee is that Martin David Hoyle, the inventor of the '290 Patent and CEO of BET, purportedly maintains his current personal residence there and BET has recently filed its patent infringement lawsuits there; all other BET business has been conducted outside of Tennessee. Since at least 2000, BET has stated in its business plan that its "principal office of record is in Bay City, Michigan, and its operations are headquartered in New Orleans, Louisiana." *See* Ex. E, BET Business Plan at 30 (May 8, 2000). As of June 21, 2012, BET listed itself as a Michigan based company on a patent publication and named Mr. Hoyle, the inventor, as a resident of New Orleans, Louisiana. *See* Ex. F, U.S. Pat. Pub. 2012/0158512 A1. As of several weeks ago, public records still yielded BET addresses in Michigan and Louisiana, but none in Tennessee. *See* Ex. G, Lexis Public Records Search

(October 2012).  The '290 Patent also lists BET as a Michigan based company and was prosecuted by a Michigan based attorney working at a Michigan based law firm.  *See* Ex. H, Relevant Sections of the '290 Patent; Ex. I-1, Firm Website; Ex. I-2, Attorney Profile. Michigan-based Mark McKinley, co-managed BET from Michigan where he had "[s]ignifigant control of [BET's] day-to-day business" since at least May, 2000.  *See* Ex. J, McKinley Article; Ex. E, BET Business Plan.

There is no evidence that BET has performed any business in Tennessee, beyond filing suit for patent infringement.  Only on September 6, 2012, the day before filing the first of its nineteen litigations, did BET register to do business in Tennessee, which was admitted to being done in preparation to file its patent infringement lawsuits.  *See* Ex. K, BET Certificate of Existence; Ex. L, Decl. of Martin David Hoyle ("Hoyle Decl.") ¶ 8.  There is no evidence that BET has an office in Tennessee, even though it admits to once having one in Michigan.  *See* Hoyle Decl. ¶ 5.  Even BET's apparent lead counsel in this case is based in the Northern District of California, more than 1800 miles away from Tennessee.  *See* Ex. M, BET Counsel's Website (located in Redwood Shores, CA, which is in the Northern District of California and adjacent to both SCEA's headquarters in Foster City, CA and SoMC's office in Redwood City, CA).

Mr. Hoyle –the inventor of the '290 Patent and CEO of BET but not a party in this litigation– claims to have moved his personal residence to Tennessee in 2006, years after the '290 Patent was applied for in 1999 and issued in 2004.  *See* Hoyle Decl. ¶ 2; Ex. H, Relevant Sections of the '290 Patent.  Mr. Hoyle admits that he did not move to Tennessee to perform BET business there.  *See* Hoyle Decl. ¶¶ 3-4 ("my non-B.E. work required my presence in the Memphis area").  There is no evidence that Mr. Hoyle has engaged in any BET business in Tennessee besides his apparent involvement in the instant litigation.

**C.     Many of the Defendants in this Litigation Are Located in California**

Of the sixteen entities BET sued other than SCEA, SEL, and SoMC on the '290 Patent and two other patents within the same patent family, Sony understands that all but two have offices in California, many in the Northern District of California.  *See* Table 4.  Nearly half of the nineteen named defendants have headquarters in California.  *See id.*  In contrast, as evident from the collective information in the transfer motions filed by the other defendants, none have operations in Tennessee excluding retail locations of two defendants.

**Table 4: Defendants with Headquarters or Offices in California**

| Defendant | Headquarters in California | Office in California | Office[6] in Tennessee |
|---|---|---|---|
| Amazon Digital Services, Inc. | | ✔ | |
| Apple Inc. | ✔ | ✔ | |
| Barnes & Noble, Inc. | | ✔ | |
| Google Inc. | ✔ | ✔ | |
| Groupon, Inc. | | ✔ | |
| Facebook, Inc. | ✔ | ✔ | |
| LinkedIn Corporation | ✔ | ✔ | |
| Match.com L.L.C. | | | |
| Microsoft Corporation | | ✔ | |
| Motorola Mobility Holdings LLC | | ✔ | |
| Pandora Media, Inc. | ✔ | ✔ | |
| People Media, Inc. | | | |
| Samsung Electronics America, Inc. | | ✔ | |
| Samsung Telecommunications America, LLC | | ✔ | |
| SCEA | ✔ | ✔ | |
| SEL | ✔ | ✔ | |
| SoMC | | ✔ | |
| Spark Networks, Inc. | ✔ | ✔ | |
| Twitter, Inc. | ✔ | ✔ | |
| **Total** | **9 of 19** | **17 of 19** | **0 of 19** |

---

[6] Excluding retail locations of Apple Inc. and Barnes & Noble, Inc.

**D.    Third Party Witnesses Are Not Located in Tennessee**

There are many potential third party witnesses based in California but no foreseeable third party witnesses in Tennessee.  During prosecution of the'290 Patent, BET cited twenty-one prior art patents and pieces of literature that BET apparently deemed material to the patentability of the '290 Patent.  *See* Ex. N, U.S. Pat. App. 09/744,033, I.D.S. (June 24, 2002).  These references were created by people working in California, at companies such as Netscape Communications Corp. and PointCast, Inc., both that were companies located in California.  Although these two companies may exist in a different form than they once did, it can be expected that many former employees and potential witnesses likely remain in California.  Not one of the references that BET submitted was created by a person or company located in Tennessee.

Furthermore, in Google's Motion to Transfer, Google identified eleven prior art references deemed potentially relevant to its invalidity defense.  The references cite to no less than twenty inventors who are based in California, all potential witnesses, and three corporate assignees that are based in California.  *See* Google's Motion to Transfer at 5-6.  Sony incorporates Google's list of third party invalidity witnesses by reference.  According to public databases, at least eighteen of the prior art inventors continue to live or work in California.  *See* Ex. D, Decl. of Shiina Akasaka ¶ 13; Ex. O-1 List of Inventors; Exs. O-2 to O-16, Supporting Evidence for List of Inventors.

Finally, in BET's infringement contentions to Sony, BET accused numerous products made by companies unrelated to Sony, many of which Sony understands are based in California.  For example, BET accuses the following products/services of infringement: Android Market, Google Play, YouTube, Netflix, Hulu Plus, Amazon (Prime) Instant Video, Kindle Store, Windows Store, Xbox Video, Xbox Music, and Xbox Games.  *See* Exs. P-1, P-2, P-3, BET

Infringement Contentions.  Sony believes that all of the aforementioned products are created by companies that are either based in, or have offices in California.

## III.   APPLICABLE LAW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002).

"Under the first part of the analysis, an adequate alternative forum must be identified." *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009); *Functional Pathways of Tenn., LLC v. Wilson Senior Care, Inc.*, 866 F. Supp. 2d 918, 930 (E.D. Tenn. 2012) ("The threshold consideration is whether the action is one that could have originally been brought in the proposed transferee district court.").

"Once the moving defendant establishes the availability of another forum, the court should consider the private interests of the parties," which include: "the convenience of the parties, the convenience of the witnesses, the location of sources of proof, where the operative facts occurred, the relative ability of litigants to bear expenses in any particular forum, the possibility of prejudice in either forum, and other practical problems affecting the case." *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp. et al.*, 2:07-cv-02702, 2008 U.S. Dist. LEXIS 50826, at *5 (W.D. Tenn. July 1, 2008) (McCalla, J.) (citations omitted); *Wong*, 589 F.3d at 833 (private factors include "ease of access to evidence, ability to obtain witness attendance, and practical problems such as ease, expeditiousness, and expense.").

The court may also consider public factors such as "administration difficulties for the trial court, local interest in the litigation, and the law applicable to the controversy." *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 523 (6th Cir. 2010).

"In addition, 'the Court may consider any factor that may make any eventual trial easy, expeditious, and inexpensive.'" *Karl Storz Endoscopy-Am., Inc.*, 2008 U.S. Dist. LEXIS 50826, at *5-6 (citations omitted).

## IV.    ANALYSIS

### A.    This Case Could Have Been Brought in the Northern District of California.

As a threshold matter, this action could have been brought in the Northern District of California, and thus may be transferred there. *See Wong*, 589 F.3d at 830. "Any civil action for patent infringement may be brought in the judicial district where the defendant resides[.]" 28 U.S.C. § 1400(b). For venue purposes, a corporation is deemed to reside in any district within which it is subject to personal jurisdiction. *See* 28 U.S.C. § 1391(c)(2), (d). SCEA, SEL, and SoMC regularly conduct business in California; their respective employees work in multiple locations in California, including in the Northern District of California. *See* SCEA Decl. ¶ 3; SoMC Decl. ¶ 3; SEL Decl. ¶ 3. Thus, this case could have been brought in the Northern District of California.

### B.    The Private Factors Strongly Favor a Transfer

1.    It Is Clearly More Convenient for the Witnesses to Litigate this Action in the Northern District of California

"'The convenience of the witnesses is probably the single most important factor in transfer analysis.'" *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)). "[A]dditional distance from home means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.* at 1343 (internal citations omitted). "'[W]hen the distance between an existing venue for trial of a matter and a

proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'"  *Id.* at 1343 (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008) (en banc)) (marks omitted).

*(a)*      <u>*Sony Witnesses*</u>

California would be more convenient for Sony.  All potential SCEA witnesses reside in the Northern District of California.  All potential SEL witnesses reside in the Southern District of California, a 95-minute, $156.00 return flight from San Francisco, or in Northern California itself.  *See* Ex. Q-1, Kayak SAN to SFO.  All of the relevant SoMC witnesses will likely be based in the Northern District of California as well.  Even if Atlanta-based SoMC witnesses are called to California, the existing SoMC Northern California office will allow them to easily work remotely, making the trip significantly less burdensome.  *See* SoMC Decl. ¶ 7.  If Japan-based witnesses need to testify, California will be less burdensome, as California is significantly closer to Japan than Tennessee and because there are direct flights from Japan to San Francisco, while Sony is not aware of any to Memphis.  *See* Ex. D, Decl. of Shiina Akasaka ¶ 32; Ex. Q-2, Kayak NRT to SFO; Ex. Q-3, Kayak NRT to MEM; Ex. Q-4; Ex. Q-5.  While we are not aware of Sony witnesses in Europe, if there were, flights into San Francisco will also likely be more convenient than Memphis.  *See Karl Storz Endoscopy-Am., Inc.*, 2008 U.S. Dist. LEXIS 50826, at *8 ("though the Western District of Tennessee is closer to Europe than the Northern District of California, [the Western District] may be a less convenient destination because there are fewer international air travel options available.").  Above, Sony has identified twenty-three Sony witnesses who work or reside in California and are likely to have relevant information.  There are none who work or reside in Tennessee.  There is no question that litigating this case in Tennessee will be significantly more burdensome for Sony than in the Northern District of California.

-13-

(b)   *Third Party Witnesses*

California will be more convenient for numerous third party witnesses.  As stated above, a large number of witnesses knowledgeable about the prior art work or reside in California, including prior art that BET apparently deemed material to the patentability of the '290 Patent. Sony has shown that these witnesses continue to live or work in California.  As Sony continues its investigation, it is expected that additional third party prior art witnesses will be found in the Northern District of California.  Currently no known potential prior art witnesses reside in Tennessee.  Beyond prior art witnesses, Sony will likely need to take discovery from the numerous third parties named in BET's infringement contentions.  *See* Exs. P-1, P-2, P-3.  The named companies are within the Northern District of California, not the Western District.  These third party witnesses may be crucial to Sony's defense and bringing them to trial in their own state will be significantly more convenient for them than to Tennessee.

Accordingly, the location of relevant third parties weighs heavily in favor of a transfer.

(c)   *BET's Witnesses*

BET's connection to the Western District is slight, and in comparison to the number of other witnesses located in California, does not tip balance against a transfer.  There is only one potential BET witness that is located in Tennessee: Mr. Hoyle, the inventor of the '290 Patent and CEO of BET.  Any 30(b)(6) deposition of BET or personal deposition of Mr. Hoyle can be expected to be scheduled at a location convenient to wherever BET or Mr. Hoyle resides at the time of the deposition.  *See Hunter Fan Co. v. Minka Lighting, Inc.*, No. 06-2108 M1/P, 2006 U.S. Dist. LEXIS 39080, at *7 (W.D. Tenn. June 12, 2006) (McCalla, J.) (location of deposition testimony relevant to a transfer motion).  While the burden for Mr. Hoyle to travel to California to testify at trial –a trial for cases that his company brought and which Sony did not– is not zero,

-14-

that burden is vastly smaller than what would be imposed on the numerous Sony witnesses and the numerous third party witnesses if the Court denies transfer.

Beyond Mr. Hoyle, BET maintains no business presence in Tennessee. Its strategic partners and investors are based in Michigan, which although closer to Tennessee than California, does not militate against a transfer. *See Karl Storz Endoscopy-America, Inc.*, 2008 U.S. Dist. LEXIS 50826, at *8 ("fact witnesses located in Texas, Illinois, and Michigan are closer, but not necessarily more convenient, to the Western District of Tennessee because either forum will necessitate air travel."). BET does not maintain and has not ever maintained an office in Tennessee, despite having maintained an office in Michigan or elsewhere. Further, BET does not appear to sell any products or perform any services from Tennessee. BET simply cannot show the level of connection to Tennessee that this Court requires to justify deference to plaintiff's choice of forum. *See Hunter Fan Co.*, 2006 U.S. Dist. LEXIS 39080, at *7 (transfer denied only where plaintiff both "conceived of, produced, and marketed [the invention] in Memphis, Tennessee" and also identified four likely witnesses in Tennessee).

*(d)*     *Co-Defendants' Witnesses*

A transfer to the Northern District of California will also be more convenient for the various other defendants BET has sued. Besides SCEA, SEL, and SoMC, BET has sued sixteen other parties. Nearly half have their headquarters in California and almost all have offices there. *See* Table 4, *ante*. Not one has a significant presence in Tennessee. *See id.* Sony understands that all defendants will request a transfer from the Western District at least in part because, as we understand, virtually all of their witnesses are located outside of Tennessee. Most defendants are or will be moving to transfer to the Northern District of California. Their desire to transfer, alone, is evidence that Tennessee will not be a convenient forum.

2.      The Location of Sources of Proof, Including Documents and Things Is in California

Because "the bulk of the relevant evidence usually comes from the accused infringer,"

the location of defendant's documents favors transfer to that location.  *In re Genentech, Inc.*,

566 F.3d at 1345.  The documents relating to Sony's accused products are located in California,

Japan, and, to a lesser degree, Georgia.[7]  *See* SCEA Decl. ¶ 6; SoMC Decl. ¶¶ 3, 6; SEL Decl. ¶

8.  In particular, to the extent that SCEA is in possession of development documents for its

accused products, they would be located in Foster City, California; SEL's product development

teams who contribute to design and development of SEL's products are based in San Diego and

San Jose; and all of SoMC's U.S. technical witnesses will likely be based in Northern California

and any Atlanta-based witnesses can easily be accommodated in California.  *See* SCEA Decl. ¶

6; SEL Decl. ¶ 8; SoMC Decl. ¶¶ 6, 7. Sony has no unique, relevant documents in Tennessee

relating to the design, development, manufacture, or engineering of the accused products.  *See*

SCEA Decl. ¶ 4; SEL Decl. ¶ 6; SoMC Decl. ¶ 4.  The "ease of access to proof" factor favors

transfer to the Northern District of California.  *See, e.g.*, *In re Nintendo Co., Ltd.*, 589 F.3d 1194,

1199-1200 (Fed. Cir. 2009) (this factor weighs "heavily in favor of transfer" where "evidence

resides in Washington or Japan with none in [the transferor state of] Texas").

3.      The Availability of Compulsory Process to Compel Unwilling Witnesses Strongly Favors the Northern District of California

This case should be transferred because the Northern District of California will be much

better able to compel non-party witnesses to attend trial.  *In re Acer Am. Corp.*, 626 F.3d 1252,

1255 (Fed. Cir. 2010) ("The venue's ability to compel testimony through subpoena power is also

an important factor in the § 1404(a) calculus.").  As enumerated in Ex. O-1, with supporting

---

[7]  SoMC has a parent company in Sweden, but at this point we have no basis to believe that they
have technical documents not redundant of what SoMC has in the United States, particularly in
SoMC's office in the Northern District of California.

Exhibits O-2 to O-16, non-party witnesses potentially critical to the claims and defenses in this case reside in and are subject to compulsory process only in the Northern District of California. For its invalidity defense, Sony may need to subpoena these third parties for documents and depositions and they may become key witnesses at trial.  If this case remains in Tennessee, Sony will be unable to compel any such California witnesses to trial, thereby seriously prejudicing Sony's defenses.  However, Sony can compel these witnesses to appear at trial in the Northern District of California.  Where "there is a substantial number of witnesses within the subpoena power of the Northern District of California and no witness[es]" in Tennessee, the "usable subpoena power here weighs in favor of transfer, and not only slightly."  *In re Genentech, Inc.*, 566 F.3d at 1345; *In re Biosearch Techs., Inc.*, 452 Fed. Appx. 986, 988 (Fed. Cir. 2011) (transfer ordered where "given the large number of witnesses that reside in [the Northern District of California], the subpoena powers of the [venue] may be expected to be invaluable in the event process is required to hale relevant witnesses into court. ¶ In contrast, . . . neither party has identified any witness subject to compulsory process in [plaintiff's choice of venue]"); *In re Verizon Bus. Network Servs.*, 635 F.3d 559, 561 (Fed. Cir. 2011) (ordering a transfer where "many witnesses reside within 100 miles of the [movant's requested forum] and would also be subject to [its] subpoena powers.  Meanwhile, it is undisputed that no witness resides within 100 miles of the [plaintiff's chosen forum]").

Accordingly, this factor weighs heavily in favor of transfer.

4.  <u>No Other Administrative Difficulties or Practical Problems Favor This District over the Northern District of California</u>

There are no practical issues that would prohibit the Court from transferring the case to the Northern District of California.  The case is still in its infancy.  No discovery requests have been served on any party and the Court has not convened an initial case management conference.

Defendants' invalidity contentions will not be due for over two months and claim construction

proceedings are more than six months away.  BET's lead counsel is based in the Northern

District of California, which will likely result in additional efficiencies if this case is transferred

there.  Moreover, the Northern District of California is clearly the "center of gravity" of this

litigation as it is the epicenter of the U.S. computer industry.  *See Stewart v. Am. Eagle Airlines,*

*Inc.*, No. 3:10-00494, 2010 U.S. Dist. LEXIS 117308 (M.D. Tenn. Nov. 3, 2010) ("A

fundamental principle guiding the Court's analysis of a motion to transfer is that litigation should

proceed in that place where the case finds its center of gravity." (internal citations omitted)).

Courts in the Northern District of California are well equipped to handle cases with the

diverse set of defendants present in this litigation as almost all defendants have a significant

presence in California.

**C.      Plaintiff's Choice of Forum Is Not Dispositive.**

A plaintiff's "choice of home forum is not a dispositive issue."  *Wong*, 589 F.3d at 833.

"[T]he Supreme Court has specifically instructed that [plaintiff's choice of forum] is only one

relevant factor for the court's consideration."  *Functional Pathways of Tenn., LLC*, 866 F. Supp.

2d at 932 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)) (internal marks

omitted).

BET has only two connections to the chosen forum and neither entitles it to significant

deference.  First, BET has registered to do business in Tennessee.  However, BET admits to

registering in Tennessee in order to file its patent infringement suits, *see* Hoyle Decl. ¶ 8, and the

court should not "honor connections to a preferred forum made in anticipation of litigation."  *In*

*re Microsoft Corp.*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011) (transfer granted where plaintiff

"took the extra step of incorporating under the laws of Texas sixteen days before filing suit.  But

that effort is no more meaningful, and no less in anticipation of litigation, than the others we

-18-

reject."). Further, despite the Tennessee registration, as recently as this past June, BET assigned patent publications continue to list BET as a Michigan-based company. *See* Ex. F, U.S. Pat. Pub. 2012/0158512 A1 (June 21, 2012).

Second, Mr. Hoyle says that he maintains a residence in Tennessee; however, all of the central facts of the lawsuit occurred outside of Tennessee. Mr. Hoyle only allegedly moved from Louisiana to Tennessee in 2006, years after filing the application in 1999 that became the '290 Patent. *See* Hoyle Decl. ¶ 3. The operation of BET, strategic decisions for the company, and the prosecution of the patent application that became the '290 Patent all occurred in Michigan or elsewhere outside of Tennessee. *See id.* ¶¶ 2, 5. Mr. Hoyle admits to moving to Tennessee only for "non-B.E. work" and since moving to Tennessee, Mr. Hoyle appears to have never done business in the state related to BET besides his presumed involvement in filing BET's patent infringement lawsuits here. *See id.* ¶ 4. Mr. Hoyle's recent patent publications continue to list Louisiana as his residence. *See* Ex. F, U.S. Pat. Pub. 2012/0158512 A1 (June 21, 2012). The volume of documents in Tennessee will likely be minimal compared to California and the only witness in Tennessee will probably be the inventor himself. "[W]here the central facts of the lawsuit occurred outside the chosen forum[,]" the "plaintiff's interest decreases." *City of Pontiac Gen. Emples. Ret. Sys. v. Wal-Mart Stores, Inc.*, NO. 3-12-0457, 2012 U.S. Dist. LEXIS 103569, at *2, *4 (M.D. Tenn. July 25, 2012) (granting transfer despite plaintiff's choice of forum and defendant's "numerous operations located in Tennessee"); *Oakley v. Remy Int'l, Inc.*, 2:09-0107, 2010 U.S. Dist. LEXIS 10821, at *17 (M.D. Tenn. Feb. 5, 2010) (plaintiff "may also be entitled to little deference where the plaintiff's chosen forum lacks any significant contact with the underlying cause of action" (internal citation omitted)). Accordingly, Mr. Hoyle's residence does not significantly weigh in favor of plaintiff.

-19-

**D.     The Public Factors Favor a Transfer**

The public factors have already been discussed at length in Google and Apple's Motion to Transfer, and Sony does not wish to burden the court with duplicative briefing.

In summary, given that nearly all defendants have significant operations in California and nearly half are headquartered there, California's interest in this case far exceeds Tennessee's. The only connection this case has to Tennessee is that Mr. Hoyle claims he resides there (despite listing a Louisiana address in recent patent filings and substantial evidence that the operative facts occurred outside of Tennessee) and that BET recently registered with the Tennessee Department of State the day before filing the first of its set of nineteen patent infringement suits. *See* Ex. K, BET Certificate of Existence.

As a result, the public interest factors weigh in favor of a transfer.

**V.     CONCLUSION**

Sony respectfully requests the Court to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

OF COUNSEL

*/s/      John Flock____*
John Flock (*admission pending*)
jflock@kenyon.com
Michael E. Sander (*admission pending*)
msander@kenyon.com
KENYON & KENYON LLP
One Broadway
New York, NY 10004-1007
212.425.7200

**Attorneys for Defendant Sony Computer Entertainment America LLC**

Respectfully submitted,

*/s/_____*
Mark Vorder-Bruegge, Jr. (#06389)
WYATT, TARRANT & COMBS, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, TN 38120-4367
Phone: 901.537.1000
Facsimile: 901.537.1010
mvorder-bruegge@wyattfirm.com