**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE**

---

| | | |
|---|---|---|
| B.E. TECHNOLOGY, LLC, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 2:12-cv-02826-JPM-tmp |
| | ) | |
| SONY COMPUTER ENTERTAINMENT AMERICA LLC, | ) ) | |
| | ) | |
|     Defendant. | ) | |

---

| | | |
|---|---|---|
| B.E. TECHNOLOGY, LLC, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 2:12-cv-02827-JPM-tmp |
| | ) | |
| SONY MOBILE COMMUNICATIONS (U.S.A.) INC., | ) ) | |
| | ) | |
|     Defendant. | ) | |

---

| | | |
|---|---|---|
| B.E. TECHNOLOGY, LLC, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 2:12-cv-02828-JPM-tmp |
| | ) | |
| SONY ELECTRONICS INC., | ) | |
| | ) | |
|     Defendant. | ) | |

---

**ORDER DENYING MOTION TO TRANSFER VENUE**

---

    Before the Court are the Motions to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (No. 12-cv-2826-JPM-tmp, ECF No. 25; No.

12-cv-2827-JPM-tmp, ECF No. 29; No. 12—cv-2828-JPM-tmp, ECF No. 24), of Defendants Sony Computer Entertainment America LLC ("SCEA"), Sony Mobile Communications (U.S.A.) Inc. ("SMC"), and Sony Electronics Inc. ("SEL") (collectively "Sony"),[1] filed January 28, 2013.[2]  For the following reasons, the Motions are DENIED.

## I.    BACKGROUND

This case concerns Sony's alleged infringement of United States Patent No. 6,771,290 (the "'290 patent").  (ECF No. 25-1 at 1.)  Plaintiff B.E. Technology, LLC ("B.E."), is the assignee of the '290 patent (ECF No. 32 at 2), currently owning "all right, title, and interest in the '290 patent, and has owned all right, title, and interest throughout the period" of the alleged infringement.  (See No. 12-cv-2826-JPM-tmp, ECF No. 1, ¶ 10; accord No. 12-cv-2827-JPM-tmp, ECF No. 1, ¶ 10; No. 12-cv-2828-JPM-tmp, ECF No. 1, ¶ 10.)

---

[1] SMC and SEL are affiliates of SCEA.  (See No. 12-cv-2826-JPM-tmp, ECF No. 25-1, at PageID 115.)

[2] SCEA, SMC, and SEL all support their Motions to Transfer Venue with the same Memorandum, attached to SCEA's Motion to Transfer Venue at No. 12-cv-2826-JPM-tmp, ECF No. 25-1.  (See, e.g., No. 12-cv-2827-JPM-tmp, ECF No. 29, at 1 ("The facts and law supporting this relief are set forth in detail in the memorandum and exhibits supporting the same motion filed in the related action against defendant's affiliate [SCEA] . . . . [SMC] incorporates that document in this motion by reference, to eliminate the necessity of the Court reviewing what would otherwise be extensive duplicate information."); accord No. 12-cv-2828-JPM-tmp, ECF No. 24, at 1.)  Additionally, B.E. Technology, LLC's Responses to the Motions to Transfer Venue, and SCEA, SEL, and SMC's Replies in support of their Motions to Transfer Venue are identical. Accordingly, the Court will refer to the Memorandum in Support of the Motions to Transfer Venue (ECF No. 25-1), the Response in opposition to the Motions to Transfer Venue (ECF No. 32), and the Reply in support of the Motions to Transfer Venue (ECF No. 35) on SCEA's docket, No. 12-cv-2826-JPM-tmp.

### A.   Civil Case No. 12-cv-2826-JPM-tmp

B.E. alleges that SCEA infringed "the '290 patent by using, selling, and offering to sell in the United States tablet computer products that directly infringe at least Claim 2 of the '290 patent either literally or under the doctrine of equivalents." (ECF No. 1 ¶ 11.)  The SCEA products alleged to infringe the '290 patent "include Game Consoles: [Playstation ("PS")] 2, PS 3, PS Vita." (Id.)

B.E. filed a Complaint in this Court on September 21, 2012. (ECF No. 1.)  SCEA filed its Answer to the Complaint on December 31, 2012 (ECF No. 21), and its Motion to Transfer Venue on January 28, 2013 (ECF No. 25).  On February 7, 2013, SCEA filed a Motion to Stay pending resolution of its Motion to Transfer Venue. (ECF No. 28.)  The Court granted SCEA's Motion to Stay on February 11, 2013. (ECF No. 31.)  B.E. filed its Response in opposition to SCEA's Motion to Transfer Venue on February 14, 2013. (ECF No. 32.)  With leave of Court (ECF No. 34), SCEA filed a Reply in support of its Motion to Transfer on March 4, 2013 (ECF No. 35).

### B.   Civil Case No. 12-cv-2827-JPM-tmp

B.E. alleges that SMC infringed "the '290 patent by using, selling, and offering to sell in the United States tablet computer products that directly infringe at least Claim 2 of the '290 patent either literally or under the doctrine of

equivalents." (ECF No. 1 ¶ 11.)  The SMC products alleged to infringe the '290 patent "include Smart Phones: Xperia Smartphones." (Id.)

B.E. filed a Complaint in this Court on September 21, 2012. (ECF No. 1.)  SMC filed its Answer to the Complaint on December 31, 2012 (ECF No. 25), and its Motion to Transfer Venue on January 28, 2013 (ECF No. 29).  On February 7, 2013, SMC filed a Motion to Stay pending resolution of its Motion to Transfer Venue.  (ECF No. 32.)  The Court granted SMC's Motion to Stay on February 11, 2013.  (ECF No. 35.)  B.E. filed its Response in opposition to SMC's Motion to Transfer Venue on February 14, 2013.  (ECF No. 36.)  With leave of Court (ECF No. 38), SMC filed a Reply in support of its Motion to Transfer on March 4, 2013 (ECF No. 39).

**C.   Civil Case No. 12-cv-2828-JPM-tmp**

B.E. alleges that SEL infringed "the '290 patent by using, selling, and offering to sell in the United States tablet computer products that directly infringe at least Claim 2 of the '290 patent either literally or under the doctrine of equivalents." (ECF No. 1 ¶ 11.)  The SEL products alleged to infringe the '290 patent "include Smart Phones: Xperia Smartphones; Smart TVs: LED HX750 Internet TVs, LED EX640 Internet TVs, Google TV; Smart Blu-Ray/DVD Player: Sony 3D Blu-Ray Disc Player, Sony Streaming Player; Game Consoles: PS 2, PS

4

3, PS Vita; e-Readers: Reader PRST1, Reader PRST2; Tablets: Xperia Tablet S, Sony Tablet S, Sony Tablet P." (Id.)

B.E. filed a Complaint in this Court on September 21, 2012. (ECF No. 1.) SEL filed its Answer to the Complaint on December 31, 2012 (ECF No. 20), and its Motion to Transfer Venue on January 28, 2013 (ECF No. 24). On February 7, 2013, SEL filed a Motion to Stay pending resolution of its Motion to Transfer Venue. (ECF No. 27.) The Court granted SEL's Motion to Stay on February 11, 2013. (ECF No. 30.) B.E. filed its Response in opposition to SEL's Motion to Transfer Venue on February 14, 2013. (ECF No. 31.) With leave of Court (ECF No. 33), SEL filed a Reply in support of its Motion to Transfer on March 4, 2013 (ECF No. 34).

**D.   Motion to Transfer Venue[3]**

Sony seeks to transfer this case to the Northern District of California. (See ECF No. 25-1 at 1.)

SCEA is headquartered in Foster City, California, in the Northern District of California. (Id. at 4.) SEL is headquartered in San Diego, California, in the Southern District of California. (Id. at 5.) SEL also has a large facility in San Jose, California, in the Northern District of California. (Id.) SMC "is a wholly owned indirect subsidiary of Sony

---

[3] All references to the Memorandum in support of the Motion to Transfer Venue, Response in opposition to the Motion to Transfer Venue, and Reply in support of the Motion to Transfer Venue, will be to those documents filed in Civil Case No. 12-cv-2826-JPM-tmp. See supra note 2 and accompanying text.

Corporation" and employs approximately 125 people in its Redwood
City, California, office, in the Northern District of
California.  (Id. at 6.)  The other major United States SMC
office is located in Atlanta, Georgia.  (Id.)

Sony argues that the case should be transferred "because
under the criteria established by 28 U.S.C. § 1404(a) and the
law of this Circuit, it would be in the interest of justice and
serve the convenience of the parties and witnesses to litigate
the case" in the Northern District of California.  (Id. at 1.)
In support, Sony asserts the following:  that the relevant
discovery and proofs for trial will primarily relate to
technical product information, marketing and sales information,
and prior art; that these materials will be not be located in
the Western District of Tennessee; that the relevant Sony
witnesses and documents will be in the Northern District of
California or within close proximity of that District; that the
relevant prior-art witnesses and third-party witnesses will be
in the Northern District of California or within close proximity
of that District; and that there is no evidence that B.E.
performs any business in Tennessee.  (Id. at 1.)

B.E. opposes Sony's Motion to Transfer Venue.  (ECF
No. 32.)  B.E. is a limited-liability company incorporated in
Delaware.  (Id. at 2.)  B.E. was originally registered in
Michigan, but formally registered to conduct business in

6

Tennessee in September 2012. (Id. at 3.) B.E. contends that
Memphis, Tennessee, is its principal place of business. (ECF
No. 1 ¶ 2.) Martin David Hoyle ("Hoyle"), B.E.'s founder and
CEO, is the named-inventor of the '290 patent. (ECF No. 32 at
1, 2.) Hoyle has been a resident of Tennessee since April,
2006. (Id. at 2.)

B.E. argues that transfer is inappropriate because it has
substantial connections with this district. B.E. argues that
Hoyle has lived in the Western District of Tennessee since 2006,
and that "Hoyle has directed B.E.'s business from this District
since at least 2008." (Id. at 1.) B.E. states that Hoyle "runs
the business of B.E. from his home office, including meeting
with the B.E. Board of Directors, filing patent applications,
and coordinating the enforcement of B.E.'s intellectual property
rights." (Id. at 3.) B.E. also argues that its corporate
documents are located in this District, including documents
relating to the "conception and reduction to practice" of the
patents-in-suit. (Id. at 8.)

## II.   STANDARD

Sony moves the Court to transfer this case to the Northern
District of California pursuant to 28 U.S.C. § 1404(a). (ECF
No. 25-1 at 1.) The statute provides that "[f]or the
convenience of the parties and witnesses, in the interest of
justice, a district court may transfer any civil action to any

7

other district or division where it might have been brought."
28 U.S.C. § 1404(a).  "As the permissive language of the
transfer statute suggests, district courts have 'broad
discretion' to determine when party 'convenience' or 'the
interest of justice' make a transfer appropriate."  Reese v. CNH
Am. LLC, 574 F.3d 315, 320 (6th Cir. 2009).

     In determining whether to transfer a case under § 1404(a),
the court must first determine whether the claim could have been
brought in the transferee district.  28 U.S.C. § 1404(a)
(allowing transfer to any other district in which the claim
"might have been brought").  Once the court has made this
threshold determination, the court must then determine whether
party and witness "convenience" and "the interest of justice"
favor transfer to the proposed transferee district.  Reese, 574
F.3d at 320; Esperson v. Trugreen Ltd., No. 2:10-cv-02130-STA-
cgc, 2010 WL 4362794, at *5 (W.D. Tenn. Oct. 5, 2010), adopted
2010 WL 4337823 (W.D. Tenn. Oct. 27, 2010).  In weighing these
statutory factors, the court may still consider the private- and
public-interest factors set forth in the pre-Section 1404(a)
case, Gulf Oil v. Gilbert, 330 U.S. 501, 508-09 (1947), but
courts are not burdened with "preconceived limitations derived
from the forum non conveniens doctrine."  Norwood v.
Kirkpatrick, 349 U.S. 29, 31 (1955) (quoting All States Freight
v. Modarelli, 196 F.2d 1010, 1011 (3d Cir. 1952)) (internal

quotation marks omitted); <u>Esperson</u>, 2010 WL 4362794, at *5.  The United States Court of Appeals for the Sixth Circuit has stated that when deciding "a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"  <u>Moore v. Rohm & Haas Co.</u>, 446 F.3d 643, 647 n.1 (6th Cir. 2006).

Additionally, the "interest of justice" factor has been interpreted broadly by courts, influenced by the individualized circumstances of each case.  The United States Court of Appeals for the Federal Circuit has set forth a non-exhaustive list of pertinent public-interest factors:

> The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law.

<u>In re Acer Am. Corp.</u>, 626 F.3d 1252, 1254 (Fed. Cir. 2010); <u>see also</u> <u>In re Nintendo Co., Ltd.</u>, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (finding the local-interest factor weighed heavily in favor of transfer); <u>Cincinnati Ins. Co. v. O'Leary Paint Co.</u>, 676 F. Supp. 2d 623, 633 (W.D. Mich. 2009) (considering

additional factors such as the relative docket congestion of the transferor and transferee districts).

Initially, B.E. argues that there is a strong presumption in favor of its choice of forum, and that its choice of forum should not be disturbed unless the defendant carries its burden to demonstrate that the balance of convenience strongly favors transfer.  (ECF No. 32 at 5-8.)  B.E.'s argument is erroneously derived from the more stringent forum-non-conveniens standard.  Compare Hunter Fan Co. v. Minka Lighting, Inc., No. 06–2108 Ml/P, 2006 WL 1627746 (W.D. Tenn. June 12, 2006) (applying the appropriate private- and public-interest factors but relying on the forum-non-conveniens doctrine to accord strong deference to the plaintiff's choice of forum), with OneStockDuq Holdings, LLC v. Becton, Dickinson, & Co., No. 2:12-cv-03037–JPM-tmp, 2013 WL 1136726, at *3 (W.D. Tenn. Mar. 18, 2013), and Roberts Metals, Inc. v. Florida Props. Mktg. Grp., Inc., 138 F.R.D. 89, 92-93 (N.D. Ohio 1991) (recognizing defendants need to make a lesser showing to overcome plaintiff's choice of forum under § 1404(a)), aff'd per curiam, 22 F.3d 1104 (6th Cir. 1994).  Although there is a strong presumption in favor of the plaintiff's choice of forum under the doctrine of forum non conveniens, under § 1404(a), a plaintiff's choice of forum may be considered, but is entitled to less deference.  Discussing the difference between the common-law doctrine of forum non

conveniens and the federal transfer-of-venue statute in Norwood,

the Supreme Court stated,

> When Congress adopted § 1404(a), it intended to
> do more than just codify the existing law on forum non
> conveniens. . . . [W]e believe that Congress, by the
> term "for the convenience of parties and witnesses, in
> the interest of justice," intended to permit courts to
> grant transfers upon a lesser showing of
> inconvenience.  This is not to say that the relevant
> factors have changed or that the plaintiff's choice of
> forum is not to be considered, but only that the
> discretion to be exercised is broader.

Norwood, 349 U.S. at 32; see also Lemon v. Druffel, 253 F.2d

680, 685 (6th Cir. 1958) ("The choice of the forum by the

petitioner is no longer as dominant a factor as it was prior to

the ruling in Norwood v. Kirkpatrick[.]"); Esperson, 2010 WL

4362794, at *5-6.

A defendant's burden under § 1404(a) is to demonstrate that

a change of venue to the transferee district is warranted.  See

Eaton v. Meathe, No. 1:11-cv-178, 2011 WL 1898238, at *2 (W.D.

Mich. May 18, 2011); Amphion, Inc. v. Buckeye Elec. Co., 285 F.

Supp. 2d 943, 946 (E.D. Mich. 2003); Roberts Metals, Inc., 138

F.R.D. at 93.  "Merely shifting the inconvenience from one party

to another does not meet Defendant's burden."  McFadgon v. Fresh

Mkt., Inc., No. 05-2151-D/V, 2005 WL 3879037, at *2 (W.D. Tenn.

Oct. 21, 2005).  "[T]he movant must show that the forum to which

he desires to transfer the litigation is the more convenient one

vis a vis the Plaintiff's initial choice."  Roberts Metals,

11

Inc., 138 F.R.D. at 93 (quoting Mead Corp. v. Oscar J. Boldt
Constr. Co., 508 F. Supp. 193, 198 (S.D. Ohio 1981)) (internal
quotation marks omitted).  If the court determines that the
"balance between the plaintiff's choice of forum and defendant's
desired forum is even, the plaintiff's choice of [forum] should
prevail."  Stewart v. Am. Eagle Airlines, Inc., No. 3:10-00494,
2010 WL 4537039, at *2 (M.D. Tenn. Nov. 3, 2010).

**III. ANALYSIS**

Sony asserts that B.E. could have brought this action in
the Northern District of California.  (See ECF No. 25-1 at 12.)
B.E. does not dispute this assertion.  (See ECF No. 32 at 4.)
The Court agrees with the parties that B.E. could have brought
this suit in the Northern District of California as personal
jurisdiction over Sony exists in that District.  Therefore, the
only issue remaining is whether the balance of the statutory
factors — the convenience to the witnesses, the convenience to
the parties, and the interest of justice — favors transfer to
the Northern District of California.  The Court will address
each statutory factor separately and balance these factors to
determine whether to transfer this case to the Northern District
of California pursuant to § 1404(a).

**A.  Convenience of the Witnesses**

When asserting that a transferee district is more
convenient for witnesses, a party "must produce evidence

regarding the precise details of the inconvenience" of the forum chosen by the plaintiff. Esperson, 2010 WL 4362794, at *8. To satisfy its burden, the movant must do "more than simply assert[] that another forum would be more appropriate for the witnesses; he must show that the witnesses will not attend or will be severely inconvenienced if the case proceeds in the forum district." Id. (quoting Roberts Metals, Inc., 138 F.R.D. at 93). Further, "[t]o sustain a finding on [this factor] . . . the party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable a court to assess the materiality of evidence and the degree of inconvenience." Eaton, 2011 WL 1898238, at *3 (quoting Rinks v. Hocking, 1:10-CV-1102, 2011 WL 691242, at *3 (W.D. Mich. Feb. 16, 2011)) (internal quotation marks omitted). It is the "materiality and importance of the testimony of prospective witnesses, and not merely the number of witnesses," that is crucial to this inquiry. Rinks, 2011 WL 691242, at *3.

Sony contends that witness convenience favors transfer to the Northern District of California. (See ECF No. 25-1 at 12-15; ECF No. 35 at 6-7.) To support this contention, Sony asserts that "[a]ll potential SCEA witnesses reside in the Northern District of California[, a]ll potential SEL witnesses reside in [California], . . . [and a]ll of the relevant SMC

witnesses will likely be based in the Northern District of
California as well." (ECF No. 25-1 at 13.) Sony further
asserts that even if Sony employees, like the SMC employees
based in Atlanta, Georgia, are called to California for
litigation, the existing SMC office in the Northern District of
California will allow "them to easily work remotely, making the
trip significantly less burdensome." (Id.) Likewise, if
employees located in Japan are needed to testify, there are
direct flights from Japan to San Francisco, California, making
the transferee district the more convenient forum. (Id.)

Sony lists twenty-three employees that are likely to have
information relevant to the instant litigation. (See id. at 4-
7.)

Regarding SCEA, Sony states that "all of [its] known
prospective witnesses are locate at or near its offices in . . .
the Northern District of California," and Sony names John
Koller, Vice President, Product Marketing and Aaron Wong, Senior
Lead Accountant, as its "expected sales, finance, and marketing
witnesses in connection with its accused products." (Liu Decl.,
ECF No. 25-2, ¶ 7.)

Regarding SEL, Sony states that it has relevant witnesses
in both its San Diego, California, and San Jose, California,
locations, relating to the engineering, strategy, and marketing
of the accused products. (See Seymour Decl., ECF No. 25-3,

14

¶¶ 8-9.)  Sony contends that the fourteen employees named in the Declaration of Matthew Seymour, Director of Product Marketing for SEL, "may have relevant information."  (Id. ¶ 9.)  Sony also admits that SEL's "counterparts in Japan" are also "likely to have relevant knowledge of SEL's accused products.  (ECF No. 25-1 at 5.)

Regarding SMC, Sony states that all of SMC's "technical witnesses will likely be based" in the Northern District of California.  (Id. at 6.)  To support its contention, Sony specifically lists seven employees located in the transferee district as witnesses with relevant information.  (Capper Decl., ECF No. 25-4, ¶ 7.)  Sony also admits that potential SMC witnesses "may also be located at the Atlanta[, Georgia] facility."  (Id.)  Sony contends that these employees "regularly commute to the California office," thus travel to the transferee district is "less burdensome than to most other U.S. locations." (Id.)

Sony further asserts that it will likely need to take discovery from numerous third parties named in B.E.'s infringement contentions and witnesses knowledgeable about prior art, many of whom will be located in California.  (ECF No. 25-1 at 14.)

In response, B.E. argues that Sony has failed to meet its burden because it has provided little information regarding the

15

nature of the proposed witnesses' testimony, instead relying upon the raw numbers of identified people with relevant knowledge. (ECF No. 32 at 10.)  Although B.E. does not affirmatively identify any witnesses of its own, Hoyle is the inventor of the patent-in-suit and a party, and it is therefore presumed his testimony will be necessary and material to B.E.'s case. B.E. states that Hoyle is located in the Western District of Tennessee. (Id. at 1-2.)

Because the convenience of party and non-party witnesses is given different weight, the Court will analyze the potential witnesses separately. See Azarm v. $1.00 Stores Servs., Inc., No. 3:08-1220, 2009 WL 1588668, at *4 (M.D. Tenn. June 5, 2009) ("[T]he convenience of potential non-party witnesses, who are not subject to the control of the parties, is a particularly weighty consideration, because it is generally presumed that party witnesses will appear voluntarily in either jurisdiction, but non-party witnesses, with no vested stake in the litigation, may not.").

### 1.  Party Witnesses

Sony asserts that the Northern District of California would be a more convenient forum for Sony employees. (ECF No. 25-1 at 13.)  Sony contends that all potential SCEA witnesses reside in the Northern District of California; that potential SEL witnesses reside in the both the Southern District of California

16

and the Northern District of California; that all relevant SMC
witnesses are likely located in the Northern District of
California; that any SMC witnesses located in Atlanta will be
able to work remotely in the SMC Northern California office; and
that if any Japan-based witnesses are needed, there are direct
flights from Japan to San Francisco, while there are no such
direct flights from Japan to Tennessee.  (Id.)  Sony asserts
that, as it has "identified twenty-three Sony witnesses who work
or reside in California and are likely to have relevant
information," there "is no question that litigating the case in
Tennessee will be significantly more burdensome for Sony than in
the Northern District of California."  (Id.)

     Sony further states that B.E. has "only one potential
witness . . . located in Tennessee: [] Hoyle, the inventor of
the '290 Patent and CEO of [B.E.]"  (Id. at 14.)  Although Sony
recognizes that there will be some burden for Hoyle having to
travel to California, Sony asserts that the burden to Hoyle "is
vastly smaller than what would be imposed on the numerous Sony
witnesses."  (Id. at 14-15.)

     B.E. argues that Sony has failed to satisfy its burden
because Sony has only made "vague representations concerning
witness inconvenience" and has not asserted any "particularized
information enabling the Court to ascertain how much weight to
give the claim of inconvenience."  (ECF No. 32 at 11.)  In

17

support, B.E. states that Sony has failed to provide the
"subject matter on which [the employees] will testify" or the
"burdens the employees would endure by traveling to Tennessee."
(Id.)

Sony does not satisfy its burden in demonstrating that the
convenience of its employees favors transfer to the Northern
District of California.  First, the Court agrees that many of
Sony's employees related to the development and operation of the
accused products are located in the transferee district and that
their testimony is likely material.  Sony, however, has not
provided any indication of the necessity of those employees to
its business.  As a result, the Court cannot assess the degree
to which the business of Sony's various entities would be
disrupted compared to the disruption B.E. will endure due to its
CEO's absence should the case be transferred.  Additionally,
while Sony argues that the burden of proceeding in the Northern
District of California is reduced when comparing its own
employee witnesses to B.E.'s one likely witness, Hoyle (ECF No.
25-1 at 14-15), the Court finds that transfer to the Northern
District of California would only shift the burden of
inconvenience from one party to another.  See McFadgon, 2005 WL
3879037, at *2.  Therefore, because § 1404(a) provides for
transfer "to a more convenient forum, not to a forum likely to
prove equally convenient or inconvenient," distance of travel

for employee witnesses does not weigh in favor of transfer. Hunter Fan, 2006 WL 1627746, at *2 (citing Van Dusen v. Barrack, 376 U.S. 612, 645-46 (1964)).

Second, while B.E. did not specifically identify any witnesses, it is presumed that Hoyle, as CEO and inventor of the patent-in-suit, will be a key witness.  B.E., however, does not have the burden to identify more witnesses for the purposes of this Motion.  Instead, Sony has the burden to give information sufficient to enable this Court "to ascertain how much weight to give a claim of inconvenience." Rinks, 2011 WL 691242, at *3. Despite B.E. not identifying any witnesses, Sony's general identification of material witnesses who are Sony employees does not satisfy its burden on this factor.  A simple numerical advantage in potential witnesses is insufficient on the issues raised by a motion to transfer.

Third, Sony does not provide any evidence showing its employees will be unwilling to testify in this district if asked to do so or how such employees will be "severely inconvenienced" if the case proceeds in this district.  See Esperson, 2010 WL 4362794, at *8.  Moreover, courts have noted that "normally a corporation is able to make its employees available to testify when needed." Clark v. Dollar Gen. Corp., No. 3-00-0729, 2001 U.S. Dist. LEXIS 25975, at *9 (M.D. Tenn. Mar. 6, 2001); see also Zimmer Enters. V. Atlandia Imps., Inc., 478 F. Supp. 2d

19

983, 991 (S.D. Ohio Mar. 14, 2007) (finding that the convenience
of witnesses who are employees "will not ordinarily be
considered, or at least, that the convenience of such employees
will not generally be given the same consideration as is given
to other witnesses"). Accordingly, it appears that Sony's
employees will be able to attend absent any evidence to the
contrary.

Moreover, B.E. argues that "[i]t is likely that Sony's
California-based employees will be deposed in California where
B.E.'s lead counsel is based." (ECF No. 32 at 12.) This
further indicates that the witness-convenience factor does not
weigh in favor of transfer. See Hunter Fan, 2006 WL 1627746, at
*2 (finding relevant that the plaintiff planned to take
depositions of the defendant's witnesses in California in
determining that the witness convenience factor did not favor
transfer).

### 2.   Non-Party Witnesses

While convenience to party witnesses is an important
consideration, "it is the convenience of non-party witnesses,
rather than employee witnesses . . . that is the more important
factor and is accorded greater weight." Steelcase Inc. v. Smart
Techs., 336 F. Supp. 2d 714, 721 (W.D. Mich. Mar. 5, 2004)
(citation omitted) (internal quotation marks omitted).

20

Sony argues that "California will be more convenient for numerous third party witnesses," as a large number of the prior-art witnesses and other defendants sued by B.E. reside in California.  (ECF No. 25-1 at 14-15.)[4]  Sony asserts that it will need to take discovery from third-party witnesses in the Northern District of California as they may be crucial to Sony's defense.  (Id. at 14.)  Further, Sony asserts that many relevant third-party witnesses are within the subpoena power of the Northern District of California, whereas Sony will be unable to compel these witnesses to trial in Tennessee.  (Id. at 17; ECF No. 35 at 5.)  Sony also argues that it would be "unable to compel any such California witnesses to testify at trial" in the Western District of Tennessee, "thereby seriously prejudicing Sony's defenses."  (ECF No. 25-1 at 17.)

B.E. argues that the convenience of third-party witnesses is not entitled to great weight in the instant case because Sony has not sufficiently addressed the "relevance, materiality, and importance of the testimony" of the alleged third-party witnesses.  (ECF No. 32 at 13.)  B.E. further argues that prior-art testimony is "almost certain to be severely limited at the time of trial" and, therefore, such testimony does not weigh in favor of transfer.  (Id. at 12.)

---

[4] Sony incorporates by reference the list of third-party invalidity witnesses in Google's Motion to Transfer Venue. (ECF No. 25-1 at 10)

The availability of compulsory process for unwilling witnesses is a consideration closely related to the convenience-of-witnesses factor and the costs of procuring the witness, and therefore is an important consideration for the Court.  See, e.g., In re Acer, 626 F.3d at 1255; Rinks, 2011 WL 691242, at *4.  Whether this factor should be given considerable weight depends on the materiality of the testimony to the resolution of the case.  Rinks, 2011 WL 691242, at *4.  A federal court in the Northern District of California would be able to compel the majority of the identified prior-art witnesses residing in that district or within the state of California to testify at trial.  See Fed. R. Civ. P. 45(b)(2); Brackett v. Hilton Hotels Corp., 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008) ("The California district courts have the power to subpoena witnesses throughout the state pursuant to [Federal Rule of Civil Procedure] 45(b)(2)(C) . . . .").  In contrast, the majority of the prior-art witnesses would not be subject to the subpoena power in this district, see Fed. R. Civ. P 45(c)(3)(A)(ii), but would be available for deposition in the Northern District of California if unwilling to testify in this District.  Therefore, the testimony of such witnesses potentially would "not be live and therefore could be less persuasive." Rinks, 2011 WL 691242, at *4.

22

The Court finds that Sony has met its burden to show the nature of the third-party witnesses testimony, and that the testimony is likely material to Sony's invalidity and non-infringement contentions.  Sony, however, has only generally stated that it would be "seriously prejudic[ed]" if it was unable to compel these potential witnesses to testify.  Sony has not indicated that depositions of non-party witnesses would be inadequate and live testimony from non-party witnesses required. To the extent the non-party witnesses' testimony may be presented by deposition, witness inconvenience would not be an issue.  Sony's general statements about relevant prior-art witness testimony are not sufficient to allow the Court to determine whether live testimony of Sony's non-party witnesses is necessary.  Further, Sony does not state whether it is aware that any of the non-party witnesses would be unwilling to testify in the Western District of Tennessee if asked to do so. As a result, this factor only weighs slightly in favor of transfer.

Additionally, Sony's argument that transfer to the Northern District of California would be more convenient for the witnesses of the other defendants sued by B.E. is not well-taken.  Motions to transfer venue pursuant to § 1404(a) are adjudicated "according to an individualized, case-by-case consideration of convenience and fairness . . . [and] balance

[of] a number of case-specific factors." <u>Stewart Org., Inc. v.
Ricoh Corp.</u>, 487 U.S. 22, 29 (1988); <u>accord</u> <u>United States v.
Gonzales & Gonzales Bonds & Ins. Agency, Inc.</u>, 667 F. Supp. 2d
987, 992 (W.D. Tenn. 2010).  The Court declines to consider the
particularities of defendants in other pending actions to
determine the weight given this factor.  Accordingly, the
convenience for the witnesses of defendants in the other B.E.
cases is not at issue in the instant case.

  **B.   Convenience of the Parties**

     Sony argues that transfer to the Northern District of
California would "serve the convenience of the parties."  (ECF
No. 25-1 at 1.)  While Sony organizes its arguments somewhat
differently than the Court, the Court finds the considerations
relevant to the convenience-of-the-parties factor are the
location of the sources of proof and the parties' financial
hardships due to litigation in the chosen forum.

  **1.   Location of Sources of Proof**

     Sony states that majority of its relevant "documents will
be in the Northern District of California or within close
proximity of that District;" that "[t]echnical information
relevant to the accusations against Sony can be found in Sony's
facility in either the Northern District of California, the
Southern District of California, Japan, or possibly Sweden;"
that "[t]he documents relating to Sony's accused products are

24

located in California, Japan, and, to a lesser degree, Georgia;"
and that "Sony has no unique, relevant documents in Tennessee."
(Id. at 1, 16.)  Sony argues that, because "'the bulk of the
relevant evidence usually comes from the accused infringer,' the
location of [Sony's] documents favors transfer" to the Northern
District of California.  (Id. at 16 (quoting In re Genentech,
Inc., 566 F.3d 1338, 1345 (Fed. Cir. 2009)).)

     B.E. argues that "[t]ransfer to the Northern District of
California would merely impose on B.E. the same inconvenience
that [Sony] . . . purportedly seeks to eliminate for [itself]."
(ECF No. 32 at 15.)  While B.E. does not contest that some of
Sony's documents will be located in the Northern District of
California, B.E. asserts that the fact that Sony has identified
documents not only in California but in Japan, Georgia, and
possibly Sweden undermines Sony's argument that the Northern
District of California is the most convenient forum for the
instant litigation.  (Id. at 13-14.)  B.E. also notes that its
own sources of proof are located in the Western District of
Tennessee and have been maintained there for years.  (Id. at
14.)  Further, B.E. contends that "the location of relevant
documentary evidence is increasingly less important in deciding
motions to transfer," and that because documents can be
exchanged electronically, the weight given this factor should be
minimal.  (Id. at 14.)  B.E. finally argues that this factor

                                25

does not weigh in favor of transfer because "it can be expected that the Sony defendants will eventually produce its documents to B.E.'s lead counsel in California, not to B.E. in Tennessee." (Id. at 15.)

As an initial matter, the Court disagrees with B.E.'s contention that advances in electronic document transfer reduce the importance of the location-of-sources-of-proof factor. This notion has been expressly rejected by the Federal Circuit. See, e.g., In re Link_A_Media Devices Corp., 662 F.3d 1221, 1224 (Fed. Cir. 2011) (reversing a district court that did not consider the factor, stating, "While advances in technology may alter the weight given to these factors, it is improper to ignore them entirely"); In re Genentech, Inc., 566 F.3d at 1345-46 (finding clear error where a district court "minimized the inconvenience of requiring the petitioners to transport their documents by noting that '[t]he notion that the physical location of some relevant documents should play a substantial role in the venue analysis is somewhat antiquated in the era of electronic storage and transmission'" (quoting Sanofi-Aentis Deutschland GmbH v. Genentech, Inc., 607 F. Supp. 2d 769, 777 (E.D. Tex. 2009))).

The Court agrees that it is likely that the sheer volume of documents Sony has in its possession outnumbers the patent-

related documents in B.E.'s possession, but the Court disagrees
that this is enough to tip the balance in favor of transfer.
The Court finds that both parties maintain relevant documents in
their respective districts, but that Sony also maintains
relevant documents outside the transferee district, namely Japan
and Georgia.  Additionally, the Court finds that both Sony's and
B.E.'s documents will be integral to the proceedings, and that
Sony will be expected to serve its documents on B.E.'s counsel
in Northern California, not in the Western District of
Tennessee.  Sony's reliance on In re Nintendo is misplaced.
(See ECF No. 25-1 at 16.)  In In re Nintendo, the court found
there were no relevant documents in the transferor district,
therefore transfer was appropriate.  See In re Nintendo, 589
F.3d at 1199-1200.  In the instant case, B.E. has shown that
relevant documents are located in Tennessee, and Sony has
admitted that it also maintains relevant documents in Georgia,
Japan, and potentially Sweden.  Taken together, the
aforementioned facts do not indicate that the Northern District
of California is a more convenient venue for the parties to the
instant case.  Accordingly, this factor does not weigh in favor
of transfer.

## 2. Financial Hardships Attendant to Litigating in the Chosen Forum

Sony argues that "most of the relevant Sony witnesses and documents will be in the Northern District of California or within close proximity of that District." (ECF No. 25-1 at 1.) Accordingly, Sony contends that litigating in the Western District of Tennessee "will be significantly more burdensome for Sony than in the Northern District of California." (Id. at 13.)

B.E. states that it "would face a financial burden by having to litigate in the Northern District of California." (ECF No. 32 at 15.) B.E.'s CEO Hoyle states that he will "personally suffer a financial harm if this case is transferred" as he "maintain[s] a technology consulting firm in Tennessee . . . [and as] a consultant, [is] typically paid only for the hours [he] works." (Hoyle Decl., ECF No. 32-1, ¶ 9.) B.E. also states that "[i]t is reasonable to require companies with the wealth and size of the Sony defendants to litigate in jurisdictions in which they regularly conduct business." (ECF No. 32 at 9.) B.E. further asserts that the "Sony defendants do not contend that they are financially incapable of bearing the expense of litigating in the Western District of Tennessee." (Id. at 15.)

The Court has considered "the relative ability of litigants to bear expenses in any particular forum" among the factors in a

§ 1404(a) case.  <u>Ellipsis, Inc. v. Colorworks, Inc.</u>, 329 F.
Supp. 2d 962, 970 (W.D. Tenn. 2004).  In the instant case,
B.E.'s CEO stated that the company will incur additional
expenses, but it has not shown with any specificity how
detrimental those expenses would be to the company.  Further,
while Hoyle stated that his personal financial status would be
adversely affected by litigating in the Northern District of
California, he did not state why or how his personal finances
would impact B.E., the party to the instant case.  B.E. has
shown that Sony has the ability to bear expenses in this forum,
but the Court does not find this to be a dispositive factor in
denying Sony's Motion.  <u>But see</u> <u>Siteworks Solutions, LLC v.</u>
<u>Oracle Corp.</u>, No. 08-2130-A/P, 2008 WL 4415075, at *4 (W.D.
Tenn. Sept. 22, 2008) (finding the relative financial strengths
of the parties did not weigh in favor of transferring the case,
as the party opposed to transfer showed it "ha[d] no net worth,
very little revenue, no gross profits, no assets, and [would
have to] borrow from its owners in order to pay the litigation
expenses").  The Court finds that the evidence presented is
insufficient to make a showing that B.E. or Sony will be
adversely affected by litigating in either forum.  The paramount
consideration remains whether the Northern District of
California is more convenient to the parties than B.E.'s chosen
forum.

With respect to convenience, the Court finds this factor does not weigh in favor of transfer. While Sony has made a showing that it would be inconvenient for its witnesses to travel to Memphis, Tennessee, for the instant litigation, B.E. has made an equal showing that its business would be disrupted in having to litigate the instant case in the Northern District of California. Accordingly, Sony has shown that the Northern District of California would be a more convenient forum for it, but it has not shown that the Northern District of California is a more convenient forum for both parties. As a result, the hardship to Sony does not indicate that transfer to the Northern District of California is more convenient.

### C. Interests of Justice

Sony argues that transfer to the Northern District of California is appropriate based on the interests-of-justice factor. (ECF No. 25-1 at 20.) These considerations include the "public-interest concerns, such as systemic integrity and fairness," of the proceedings. See Moore, 446 F.3d at 647 n.1. In its Motion, Sony does not brief the issue of whether the interest-of-justice factor favors transfer, as the public-interest concerns "have already been discussed at length in Google and Apple's Motion to Transfer, and Sony does not wish to burden the court with duplicative briefing." (ECF No. 25-1 at 20.) The Court interprets this as incorporating by reference

30

the interest-of-justice factors as briefed by Google and Apple
in their respective Motions to Transfer Venue.  In those cases,
the Court held that the interest-of-justice factors — trial
efficiency and local interest — raised by Google and Apple did
not favor transfer.  (See Order Den. Mot. to Transfer Venue,
B.E. Technology, LLC v. Google Inc., No. 12-cv-2830-JPM-tmp
(W.D. Tenn. May 24, 2013), ECF No. 45, at 22-25; Order Den. Mot.
to Transfer Venue, B.E. Technology, LLC v. Apple Inc., No. 12-
cv-2831-JPM-tmp (W.D. Tenn. June 20, 2013), ECF No. 45, at 24-
27.)

For the same reasons set forth in the above-mentioned
Orders, the Court finds that the trial-efficiency factor in this
case is neutral to its determination of whether the Northern
District of California is the more convenient forum; and the
Court finds that Sony has not demonstrated the Northern District
of California's local interest outweighs that of the Western
District of Tennessee.  Accordingly, the interest-of-justice
factors at issue in this case do not favor transfer to the
Northern District of California.

IV.  CONCLUSION

For the foregoing reasons, the Court finds that, in
balancing the statutory factors, Sony has not demonstrated that
the Northern District of California is a more convenient forum
than the Western District of Tennessee.  Therefore, the Motions

to Transfer Venue of SCEA, SMC, and SEL (No. 12-cv-2826-JPM-tmp, ECF No. 25; No. 12-cv-2827-JPM-tmp, ECF No. 29; No. 12-cv-2828-JPM-tmp, ECF No. 24) are DENIED.

Accordingly, the Court LIFTS the February 11, 2013, stay of all proceedings.  (No. 12-cv-2826-JPM-tmp, ECF No. 31; No. 12-cv-2827-JPM-tmp, ECF No. 35; No. 12-cv-2828-JPM-tmp, ECF No. 30).

Regarding the Court's February 8, 2013, Order granting SCEA, SMC, and SEL's Motions for Extension of Time to File a Response to Plaintiff's Motion to Strike Defenses (No. 12-cv-2826-JPM-tmp, ECF No. 30; No. 12-cv-2827-JPM-tmp, ECF No. 34; No. 12-cv-2828-JPM-tmp, ECF No. 29), SCEA, SMC, and SEL shall have fourteen (14) days from the date of entry of this Order, up to and including August 2, 2013, to file their responses.

**IT IS SO ORDERED** this 19th day of July, 2013.


s/ Jon P. McCalla_____
CHIEF U.S. DISTRICT JUDGE